**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 21-cv-00952-CMA-GPG

SHANTA LOECKER,

     Plaintiff,

v.

COLORADO MESA UNIVERSITY, and
BOARD OF TRUSTEES FOR COLORADO MESA UNIVERSITY,

     Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

---

This matter is before the Court on Defendants Colorado Mesa University's and the Board of Trustees for Colorado Mesa University's (collectively "Defendants") Motion to Dismiss Plaintiff's Complaint ("Motion"). (Doc. 20.) For the following reasons, the Motion is granted in part and denied in part.

## I.    BACKGROUND[1]

This is an employment discrimination and retaliation case. Plaintiff Shanta Loecker ("Plaintiff") is a "South Asian woman who was born in India and later adopted by an American family." (Doc. # 1 at ¶ 47.) Plaintiff was hired by Defendant Colorado Mesa University ("CMU") in 2018 to serve as head coach of CMU's women's lacrosse

---

[1] The Court draws the following facts from the Complaint and presumes they are true for purposes of the Motion to Dismiss. *See Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

team. (*Id.* at ¶ 52.) Plaintiff alleges that she was the only female coach and the only coach of color when she was hired. (*Id.* at ¶ 54.)

Plaintiff avers that the two co-athletic directors at CMU—Kris Mort and Bryan Rooks—made problematic comments regarding gender and race. Plaintiff alleges that, when she first began working at CMU, her predecessor—a woman—"was regularly and openly spoken of in a stereotypical and negative manner," such as referring to her as "volatile," "emotional," and "loud." (*Id.* at ¶ 55.) During one such instance, Ms. Mort told Plaintiff that "if she could get away with hiring only men, she would because women are 'too emotional' and 'difficult'" (*Id.* at ¶ 56.) Plaintiff asserts that this sentiment was repeated numerous times. (*Id.* at ¶ 57.)

Plaintiff alleges that Mr. Rooks also "made numerous comments implying that it was harder for administrators to manage female coaches than male coaches because coaching was a better fit for males." (*Id.* at ¶ 58.) Plaintiff further avers that Mr. Rooks singled her out to discuss issues regarding race and identity. (*Id.* at ¶¶ 60–63.)

Despite an environment that Plaintiff identifies as "problematic" and "adverse" (*id.* at ¶¶ 59, 63), Plaintiff states that her team excelled (*id.* at ¶¶ 64–68.) Plaintiff alleges that she led the team to numerous accomplishments, including having the highest national ranking in the program history and the highest regional ranking in program history. (*Id.*)

However, Plaintiff complains that her work environment deteriorated after she had a confrontation with another coach in September 2019. (*Id.* ¶ 69.) Plaintiff alleges

that the head soccer coach and his assistant were verbally and physically aggressive toward her, causing her to feel threatened. (*Id.* at ¶¶ 70–76.)

According to Plaintiff, she reported this incident to Ms. Mort and Mr. Rooks. (*Id.* at ¶¶ 77–78.) However, neither offered support. (*Id.* at ¶¶ 79–80.) Ms. Mort allegedly told Plaintiff a story about another male coach's behavior, and Plaintiff determined that the implication was that she "just needed to deal with that kind of behavior from male coaches." (*Id.* at ¶¶ 79–80.) Further, Ms. Mort and Mr. Rooks discouraged Plaintiff from reporting the incident to Human Resources. (*Id.* at ¶ 81.)

Plaintiff alleges that her "work environment greatly deteriorated" after she reported the other coach's behavior. (*Id.* at ¶ 82.) Plaintiff's immediate supervisor was not available for support, and Plaintiff was not invited to social events. (*Id.* at ¶¶ 83–85.) Several athletes left the department (*id.* at ¶¶ 86–91), and Ms. Mort asked Plaintiff "if she had ever referred to any of her players as 'narcissistic fucking brats'" (*id.* at ¶ 92), which Plaintiff denies (*id.* at ¶ 93).

On April 3, 2020, Ms. Mort and Mr. Rooks terminated Plaintiff, after the lacrosse season was cancelled on March 13, 2020. (*Id.* at ¶¶ 95–96.) Ms. Mort and Mr. Rooks told Plaintiff that she was being fired because "she had created a negative culture" and there had been complaints about her from players and parents. (*Id.* at ¶ 97.) Plaintiff alleges that the complaints about her were false or exaggerated, and she also alleges that male coaches at the school engaged in the same—or more extreme—behavior, without punishment. (*Id.* at ¶¶ 99–108.) Further, according to Plaintiff, white and/or male coaches with "far more significant turnover" were not punished. (*Id.* at ¶¶ 109–110.)

Plaintiff alleges that CMU held her to a higher standard than any of its white and/or male coaches. (*Id.* at ¶ 111.) Additionally, Plaintiff was replaced by "a white female who was lesser qualified because she had not recently been a head coach of a collegiate program." (*Id.* at ¶ 112.)

Plaintiff filed this lawsuit on April 2, 2021. She alleges that her termination was discriminatory on the basis of sex under Title IX of the Education Amendments of 1972, and on the basis of race and sex under Title VII of the Civil Rights Act of 1964. (*Id.* at ¶¶ 113–134.) Plaintiff also alleges retaliation under Title VII. (*Id.*)

On June 28, 2021, Defendants filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. # 20.) The motion has been fully briefed. (Doc. ## 23, 25.)

## II.     LEGAL STANDARDS

## A.     RULE 12(b)(1) LEGAL STANDARD

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cnty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Rule 12(b)(1) provides for challenges to a court's subject matter jurisdiction. *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1294 (10th Cir. 2003). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994).

**B.     RULE 12(b)(6) LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

5

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### III.    DISCUSSION

### A.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER CMU

First, Defendants argue that the Court lacks subject matter jurisdiction over Defendant Colorado Mesa University. (Doc. # 20 at 5–6.) Under Colorado law, the Board of Trustees for Colorado Mesa University may "be a party to all suits and contracts." C.R.S. § 23-53-102. However, the statutes and constitutional provisions pertaining to CMU convey no such authority. *See Persik v. Colorado State Univ.*, 60 F. App'x 209, 211 (10th Cir. 2003) (holding that because the university was not subject to suit, the dismissal of that university was correct as a matter of law). Plaintiff does not object to dismissal of CMU. (Doc. # 23 at 1.) Accordingly, the Court grants Defendants' motion to dismiss CMU from this action for lack of subject matter jurisdiction.

6

**B.    SUFFICIENCY OF ALLEGATIONS IN COMPLAINT**

Next, Defendant Board of Trustees for Colorado Mesa University (the "Board of Trustees") argues that Plaintiff has failed to state a claim for relief for discrimination in violation of Title VII or Title IX. (Doc. # 20 at 6–15.) The Board of Trustees also argues that Plaintiff has failed to state a claim for retaliation under Title VII. (*Id.* at 13–16.) The Court addresses each argument in turn.

    1.    <u>Discrimination Claims</u>

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title IX of the Education Amendments of 1972 prohibits discrimination "on the basis of sex" in education, including a prohibition on employment discrimination in federally funded educational programs. 20 U.S.C. § 1681(a); *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017). Courts generally evaluate Title IX claims under the same legal framework as discrimination claims under Title VII. *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021).

At the motion to dismiss phase, a plaintiff is not required to establish a prima facie case to prove her claim for disparate treatment under Title VII. *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1050 (10th Cir. 2020). Rather, the Court considers whether the plaintiff has set forth a plausible claim in light of the elements of her claim. *Id.* A plaintiff proves a violation of Title VII or Title IX by direct evidence of

discrimination or by following the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015). Under the *McDonnell* test, a plaintiff must establish a prima facie case of discrimination. *Id.*

      The articulation of a plaintiff's prima facie varies, "depending on the context of the claim and the nature of the adverse employment action alleged." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). Courts have set forth several ways a plaintiff can establish a prima facie case of discrimination. A plaintiff bringing a claim of employment discrimination in a termination decision must show the following four elements: (1) she "belongs to a protected class'" (2) she "was qualified for" her job; (3) despite her qualifications, she was discharged; and (4) "the job was not eliminated after" her discharge. *Frappied*, 966 F.3d at 1050–51 (citation omitted). Other courts have articulated the following three elements to establish a prima facie case of employment discrimination: "(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

      Regardless which test is applied, "[t]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000). If the plaintiff succeeds in establishing a prima facie case of discrimination, the burden shifts to the

employer to proffer a legitimate, non-discriminatory reason for the adverse employment action, after which a plaintiff may prevail only by showing that the defendant's stated justification for the adverse action was pretextual. *Aluru v. Anesthesia Consultants*, 176 F. Supp. 3d 1116, 1124 (D. Colo. 2016).

Plaintiff alleges that she was discriminated against based on her gender and race when she was fired from her position as head coach as CMU. It is undisputed that Plaintiff is a member of two protected classes. She is a female person of South Asian descent. (Doc. # 1 at ¶ 47.) Further, there is no dispute that Plaintiff suffered an adverse employment action when she was terminated. (*Id.* at ¶ 96.) Thus, Plaintiff has sufficiently alleged two prongs necessary to establish a prima facie case for discrimination.

The parties primarily dispute whether Plaintiff has plausibly alleged that the adverse action occurred under circumstances giving rise to an inference of discrimination. An employee's burden at this stage is not onerous, and an employee might demonstrate this element in a variety of ways, including showing that: (1) "another employee, not of a protected class, was treated more favorably or not subjected to the adverse action;" (2) "an employer made discriminatory comments or remarks;" or (3) "following the employee's termination, the employee was replaced with someone outside the protected class." *Aluru*, 176 F. Supp. 3d at 1126 (collecting cases; alterations and citations omitted).

Plaintiff has sufficiently alleged the final prong necessary to establish a prima facie case of discrimination. Plaintiff alleges that white, male coaches were engaged in

the same alleged behavior, but they were not terminated. Plaintiff was allegedly fired for making inappropriate comments to her players, but another coach was not fired for making similar or worse remarks to his players. (*Compare* Doc. # 1 at ¶¶ 92, 97–98 *with* ¶¶ 100–101.) Plaintiff also alleges that she was terminated because of her behavior surrounding nutrition (*id.* at ¶¶ 102–103), but another white, male coach was not terminated for similar behavior (*id.* at ¶¶ 205–107).

Defendants argue that Plaintiff has failed to identify *similarly situated* employees who were engaged in misconduct of comparable seriousness. (Doc. # 20 at 11–13; Doc. # 25 at 2.) Thus, Defendants argue that Plaintiff's claims should be dismissed for this reason. However, courts look at a variety of factors to determine whether employees are similarly situated, including whether the employees deal with the same supervisor and other relevant employment circumstances of each employee. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997).

As outlined above, Plaintiff has alleged that other coaches at CMU engaged in the same behavior and were not fired. Drawing all reasonable inferences in favor of Plaintiff, Plaintiff has sufficiently alleged that other employees, not of a protected class, were treated more favorably or not subjected to adverse action. *Aluru*, 176 F. Supp. 3d at 1126. At this preliminary stage of the proceedings, Plaintiff's allegations are sufficient to nudge her claim "across the line from conceivable to plausible," so it is subject to dismissal. *Twombly*, 55 U.S. at 570. Defendants' factual arguments are best saved for a motion for summary judgment.

Plaintiff has also plausibly alleged that the adverse action occurred under circumstances giving rise to an inference of discrimination for two additional reasons. First, Plaintiff alleges that the two co-athletic directors, including her direct supervisor, made derogatory remarks about women prior to her termination. For example, Plaintiff alleges that her supervisor told her that "if she could get away with hiring only men, she would because women are 'too emotional' and 'difficult.'" (*Id.* at ¶¶ 55–56.) This sentiment was repeated regularly by the co-athletic directors at CMU. (*Id.* at ¶ 55, 57–58.)

Second, Plaintiff alleges that she was replaced by someone outside her protected class. Plaintiff asserts that she was qualified for the job and that she performed her job well. (*Id.* at ¶¶ 64–66.) Further, Plaintiff alleges that that she was replaced by a lesser-qualified white, female coach, outside Plaintiff's protected class as a South Asian individual. (*Id.* at ¶¶ 47, 112.) Based on the foregoing, Plaintiff has sufficiently alleged a prima facie case for discrimination under Title VII and Title IX. *See Aluru*, 176 F. Supp. 3d at 1126.

Defendants argue that, even if Plaintiff has met her initial burden of establishing a prima facie case of discrimination, she has not established that the reasons for her termination were pretextual. (Doc. # 1 at 13–15.) However, a plaintiff need not rebut a defendant's proffered rationale for termination at this stage of the proceedings. *Kennedy v. Regents of Univ. of Colorado*, No. 18-cv-02245-PAB-SKC, 2019 WL 4751764, at *4 (D. Colo. Sept. 30, 2019); *see also Adenowo v. Denver Pub. Sch.*, No. 14-cv-02723-RM-MEH, 2015 WL 4511924, at *3 (D. Colo. June 17, 2015), *report and*

*recommendation adopted,* No. 14-cv-02723-RM-MEH, 2015 WL 4504931 (D. Colo. July 24, 2015) (observing that at the motion to dismiss stage "a plaintiff is not required to meet the  burden-shifting framework, where the initial burden is on a plaintiff to establish a prima facie case of discrimination"). Rather, the Court looks only to whether Plaintiff has set forth a plausible claim for relief. *See Frappied*, 966 F.3d at 1050.

In light of the foregoing—and given the minimal burden that Plaintiff bears at this stage—Plaintiff has plausibly alleged circumstances giving rise to the inference of discrimination.

2.    Retaliation[2]

Title VII also makes it unlawful for an employer to retaliate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192–93 (10th Cir. 2012) (citing 42 U.S.C. § 2000e–3(a)). To state a prima facie case for retaliation under Title VII, a plaintiff must show "(1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Khalik*, 671 F.3d at 1192–93 (alterations and citation omitted).

---

[2] Plaintiff's retaliation claim is not set forth as a separate cause of action. Rather, Count I of the complaint sets forth a claim for "Gender Discrimination, Race Discrimination, and Retaliation in Violation of Title VII." (Doc. # 1 at 16–18.) Count II of the complaint sets forth a claim for "Gender Discrimination in Violation of Title IX." (*Id.* at 18–20.)

Plaintiff's allegations related to her claim for retaliation are sparse. Plaintiff alleges that she had an altercation with the men's soccer coach in September 2019. (Doc. # 1 at ¶¶ 69–75.) Plaintiff avers that, after the altercation, she sought help from Ms. Mort because the soccer coach was "disrespectful." (*Id.* at ¶¶ 77–81.) Plaintiff complains that the soccer coach was not disciplined after the incident, and she further states that her work environment deteriorated after the altercation. (*Id.* at ¶¶ 82–85.) Plaintiff also alleges that she was fired almost seven months later in April 2020. (*Id.* at ¶ 96.) In her Complaint, Plaintiff states that she was discharged for engaging in protected opposition to discrimination related to the soccer coach's behavior. (*Id.* at ¶ 130.b.)

Plaintiff has failed to establish a prima facie case of retaliation for two reasons. First, Plaintiff has failed to allege that her complaints about the soccer coach related to protected opposition to discrimination. Indeed, Plaintiff does not allege that her complaints to the co-athletic directors related to discrimination based on gender or race. Rather, Plaintiff alleges that the soccer coach was "disrespectful." (*Id.* at ¶¶ 77–78.) Without an allegation that Plaintiff complained of discriminatory behavior related to the altercation—rather than rude or disrespectful behavior—Plaintiff's complaint is insufficient to state a claim for relief for retaliation. *See Kendrick*, 220 F.3d at 1234 (affirming dismissal of a claim where the plaintiff did not complain of discrimination and finding that plaintiff failed to establish a causal connection between his complaints and discharge); *Harp v. Dep't of Hum. Servs., Colorado Mental Health Inst. at Pueblo*, 932 F. Supp. 2d 1217, 1230 (D. Colo. 2013) (finding that "[a]bsent evidence that she

engaged in protected opposition to discrimination," the plaintiff failed to establish a prima facie case of retaliation).

Plaintiff argues that she has sufficiently pleaded facts to support a claim of retaliation because she complained about verbal abuse by the men's soccer coach and, instead of offering support, Ms. Mort "described an incident in which the baseball coach (white, male) pounded his chest like a gorilla." (Doc. # 23 at 11–12.) Plaintiff argues that "[t]he clear implication of this [story], and the inference that must be drawn . . . is that Ms. Mort was indicating to [Plaintiff] that boorish behavior by male coaches is just something female coaches have to put up with." (*Id.* at 12 citing Doc. # 1 at ¶ 79.) However, Plaintiff's conclusory allegation is insufficient to support a claim of retaliation, particularly where, as here, Plaintiff has alleged verbal abuse, not discrimination. While the soccer coach's alleged behavior may have been abhorrent, complaints about workplace disagreements are not protected activity and cannot give rise to a claim of retaliation. *See McGowan v. Bd. of Trustees for Metro. State Univ. of Denver*, 114 F. Supp. 3d 1129, 1137 (D. Colo. 2015); *Harp*, 932 F. Supp. 2d at 1230 (noting that complaints regarding work-place unrelated to discrimination are not protected activities under Title VII and will not satisfy first prong of prima facie test for retaliation).

Finally, Plaintiff has failed to establish a prima facie case of retaliation because she has not demonstrated a causal connection between her complaint and her termination. Although "[a] retaliatory motive may be inferred when an adverse action closely follows protected activity," termination itself will not suffice "unless the termination is *very closely* connected in time to the protected activity." *Anderson v.*

14

*Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (emphasis in the original).
Plaintiff alleges that she was terminated approximately seven months after she
complained about the soccer coach's behavior. A seven-month period between
Plaintiff's complaint and termination—standing alone—is insufficient to establish a
causal connection to support a claim for retaliation. *Id.* (noting that a three-month period
is insufficient to establish causation); *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir.
2013) (finding that a 45-day period between the protected activity and the
allegedly retaliatory action supports an inference of causation, while a three-month gap
will not).

Accordingly, based on the foregoing, Plaintiff has failed to meet her burden at the
pleading stage of plausibly alleging a claim for retaliation. *Khalik*, 671 F.3d at 1194.

## IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

- Defendants' Motion to Dismiss (Doc. # 20) is granted in part and denied in part.

- The Court DISMISSES Defendant Colorado Mesa University from this action for
lack of subject matter jurisdiction.

- The Court DISMISSES, without prejudice, Plaintiff's claims for retaliation under
Title VII of the Civil Rights Act of 1964.

- Plaintiff shall have fourteen days from the date of this order to file a motion for
leave to amend her complaint related to her retaliation claim. The motion shall
include a proposed amended complaint. If Plaintiff moves to amend her
complaint, the retaliation claim shall be set forth as a separate cause of action,

distinct from Plaintiff's claims for discrimination.

- The Motion is DENIED in all other respects.

- The stay of this case is LIFTED. Consistent with the order granting the motion to stay (Doc. # 32), the parties are directed to contact Magistrate Judge Gallagher within ten days of this Order.

DATED:  March 22, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge