IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-00952-CMA-GPG

SHANTA LOECKER,

    Plaintiff,

v.

BOARD OF TRUSTEES FOR COLORADO MESA UNIVERSITY,

    Defendant.

---

**ORDER GRANTING MOTION TO STRIKE REPORT AND EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT LAURA BURTON**

---

This matter is before the Court on Defendant the Board of Trustees for Colorado Mesa University's ("the Board") Motion to Strike Report of and Exclude Testimony of Plaintiff's Expert Laura Burton. (Doc. # 57.) For the following reasons, the Motion is granted.

                                                  I.      **BACKGROUND**

This is an employment discrimination case. Plaintiff Shanta Loecker is a "South Asian woman who was born in India and later adopted by an American family." (Doc. # 1 at ¶ 47.) Ms. Loecker was hired by Colorado Mesa University ("CMU") in 2018 to serve as head coach of CMU's women's lacrosse team. (*Id.* at ¶ 52.) On April 3, 2020, Ms. Loecker was terminated. (*Id.* at ¶¶ 95–96.) CMU's co-athletic directors allegedly told Ms. Loecker that she was being fired because "she had created a negative culture" and

there had been complaints about her from players and parents. (*Id.* at ¶ 97.) Plaintiff alleges that the complaints about her were false or exaggerated, and she also alleges that male coaches at the school engaged in the same—or more extreme—behavior, without punishment. (*Id.* at ¶¶ 99–108.)

Ms. Loecker filed this lawsuit on April 2, 2021. She alleges that her termination was discriminatory on the basis of sex under Title IX of the Education Amendments of 1972, and on the basis of race and sex under Title VII of the Civil Rights Act of 1964. (*Id.* at ¶¶ 113–134.) Plaintiff also alleged retaliation under Title VII, but the Court dismissed without prejudice this claim on March 22, 2022. (Doc. # 33 at 12–15.) Ms. Loecker did not amend her Complaint. Therefore, only Ms. Loecker's discrimination claims remain.

Ms. Loecker disclosed Laura Burton, Ph.D., as an expert. Dr. Burton is a professor in the Sport Management program in the Department of Educational Leadership at the University of Connecticut. (Doc. # 57-2 at 1.) Her research focuses on "the social science of sport" including specializations in "social psychology research on leadership, gender stereotypes and gender bias within the context of sport organizations." (*Id.* at 1–2.) Dr. Burton's expert report purports to explain:

- "How gender bias and gender stereotypes, and the intersection of racial bias and gender bias operate in a work organization including in a college athletic organization (athletic department).
- How leadership and expectations for effective leadership (i.e., head coaches) are gendered and racialized and subject to stereotyping.

2

- The perceived mismatch between being an effective leader (i.e., head coach) and being a woman.
- How women can be negatively evaluated when demonstrating certain types of leadership behaviors and coaching behaviors.
- How gender bias can impact the evaluation of women coaches."

(*Id.* at 1.) On January 19, 2023, the Board filed the instant Motion seeking to strike Dr. Burton's report and preclude her testimony pursuant to Federal Rules of Evidence 702 and 403. *See generally* (Doc. # 57.) The motion has been fully briefed. (Docs. ## 66, 77.)

## II.     LEGAL STANDARDS

Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Fed. R. Evid. 702. Before the expert can offer such opinions, however, the proponent of the testimony must demonstrate, by a preponderance of the evidence, that the expert's testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *United States v. Crabbe*, F. Supp. 2d 1217, 1220–21 (D. Colo. 2008). To do so, the proponent must establish that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The trial court acts as a "gatekeeper," reviewing the proffered opinions for

3

both relevance and reliability before determining whether the evidence is admissible under Rule 702. *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–95 (1993); *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). The overarching purpose of the court's inquiry is "to make certain that the expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Goebel*, 346 F.3d at 992 (quoting *Kumho Tire*, 526 U.S. at 152).

Generally, "rejection of expert testimony is the exception rather than the rule." *United States v. Nacchio*, 519 F.3d 1140, 1154 (10th Cir. 2008), *vacated in part on rehearing en banc*, 555 F.3d 1234 (10th Cir. 2009); *see also* Fed. R. Evid. 702, advisory committee's notes to 2000 amendments. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Rule 702's requirement that the testimony will "'assist the trier of fact to understand or to determine a fact in issue,' goes primarily to relevance." *Id.* at 580. The United States Court of Appeals for the Tenth Circuit has explained that "under Fed. R. Evid. 702 'the "touchstone" of admissibility is helpfulness to the trier of fact.'" *Thompson v. State Farm Fire and Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) (quoting *Wreth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991). As such, expert testimony, like all evidence, may be excluded "if its probative value is substantially outweighed by a

danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403; *see also Thompson*, 34 F.3d at 941. Therefore, "where . . . expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally 'assist the trier of fact,' [and] it must be viewed as a 'needless presentation.'" *Id.* (citing Fed. R. Evid. 403).

### III. DISCUSSION

The Board does not raise arguments related to Dr. Burton's qualifications, the sufficiency of her data, or the reliability of her principles and methods. *See* Fed. R. Evid. 702(a)–(c). Rather, the Board's first argument for exclusion of Dr. Burton's report and testimony centers on Rule 702(d)'s requirement that "the expert has reliably applied the principles and methods to the facts of the case." *Id.* at 702(d). The Board argues that Dr. Burton's report and testimony should be excluded because it "does not consider the facts of this case at all, let alone apply any principles discussed in the report to those facts." (Doc. # 57 at 6.) Relying on the advisory committee's notes regarding Rule 702, Ms. Loecker counters the rule does not require Dr. Burton's report to be stricken. (Doc. # 66 at 3–4.) Ms. Loecker also offers as an alternative to striking the report under Rule 702(d), a supplemental report by Dr. Burton which includes the factual analysis the Board argues is required. *See* (Doc. # 67-2.)

The Court agrees that Rule 702 does not bar expert reports or testimony, like the one initially submitted by Dr. Burton, which does not apply the relevant expertise to the

facts of the case at hand. The acceptability of such reports and testimony was contemplated by the Advisory Committee as far back as the notes regarding the 1972 Proposed Rules which state, "[t]he rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts." This principle was reinforced by the Advisory Committee in its comments to the 2000 Amendments. Ms. Loecker correctly points out that these notes recognize that,

> it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case. . . . The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles. For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.

Fed. R. Evid. 702, advisory committee's notes to 2000 amendments; *see also Tuli v. Brigham & Women's Hosp., Inc.*, 592 F. Supp. 2d 208, 214–16 (D. Mass. 2009) (concluding that an expert's testimony were not only admissible despite a lack of opinion on the case at bar, but also that this was a "strength of [the expert's] testimony, not a weakness.").

Therefore, the Court concludes that the Board has not articulated a basis for excluding Dr. Burton's report, as originally disclosed, under Rule 702(d).

The Board's next argument is that Dr. Burton's report and testimony should be excluded under Rule 403 because her expertise will not assist the jury. (Doc. # 57 at 8–9.) Specifically, the Board argues that Dr. Burton's testimony concerns issues—gender

and race discrimination—"that a jury is capable of assessing for itself." (*Id.* at 8); *Thompson*, 34 F.3d at 941. Ms. Loecker disagrees. She argues that Dr. Burton's testimony will be vital for the jury because it goes well beyond "the fact that race and gender stereotypes exist and that sports are male dominated," and includes coverage of topics such as "how bias and stereotyping works at an organizational level, why female student athletes may hold biases against female coaches, and why organizations respond to [sic] differently to complaints made by female student athletes versus male student athletes." (Doc. # 66 at 5.)

The Court has significant discretion when considering the admission of expert testimony. *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962). The Court recognizes that some federal district courts across the country have determined that expert testimony in the same vein as Dr. Burton's is admissible and would be helpful to the jury. *See, e.g.*, *Price Waterhouse v. Hopkins*, 490 U.S. 228, 235–36 (1989) (discussing expert testimony regarding gender stereotyping patterns in the accounting firm partner selection process); *Tuli*, 592 F. Supp. 2d at 214–16 (finding admissible expert testimony in "social framework analysis, which specifically addresses issues of sex stereotyping and discrimination.").

However, upon reviewing Dr. Burton's report, the Court agrees with the Board that the expertise offered by Dr. Burton falls within a category of "issues an average person can evaluate and understand without the assistance of an expert." *Smith v. Colorado Interstate Gas Co.*, 794 F. Supp. 1035, 1044 (D. Colo. 1992); *see also Sanderson v. Wyo. Highway Patrol*, No. 18-cv-0016-SWS, 2018 WL 8131669, at *2 (D.

7

Wyo. Dec. 17, 2018) (affirming a Magistrate Judge's finding that gender stereotype testimony would not assist the trier of fact); *Childers v. Trs. of the Univ. of Pa.*, No. 14-2439, 2016 WL 1086669, at *6 (E.D. Pa. Mar. 21, 2016) ("Because . . . stereotypes of women in the workplace are well within a layperson's common knowledge, [the expert's] testimony will not help the trier of fact, and may even cause confusion."); *EEOC v. Bloomberg*, No. 7 Civ. 8383(LAP), 2010 WL 3466370, at *17 (S.D.N.Y. Aug. 31, 2010) (agreeing with a Minnesota appeals court which had stated that "[i]nformation about and commentary on gender issues is so abundant in our society that it has become a common stereotype that women receive disparate and often unfairly discriminatory treatment in the workplace."). Ms. Loecker will still have the opportunity to present evidence related to her allegations that white, male coaches engaged in behavior comparable to that which allegedly led to her termination without reprimand. *Compare* (Doc. # 1 at ¶¶ 92, 97–98, 102–03), *with* (*id*. at ¶¶ 100–101, 104–07.) Accordingly, because the Court finds Dr. Burton's proposed expert testimony will not assist the trier of fact, her testimony is inadmissible.

      Even assuming that Dr. Burton's opinion is otherwise admissible, its fails Rule 403's balancing test because its minimal probative value is substantially outweighed by its prejudicial effect. Fed. R. Evid. 403. Dr. Burton's opinion focuses on factors that give rise to gender stereotyping in sports and athletic programs. Ms. Loecker specifically argues this testimony is essential to educate the jury on reasons why the female athletes she coached "may hold biases against female coaches." (Doc. # 66 at 5.) However, the Court agrees with the Board that this would likely distract the jury's

8

attention from considering the evidence as it applies to the issue of whether CMU—rather than the student athletes—engaged in discrimination. *Riser v. QEP Energy*, 776 F.3d 1191, 1199–1200 (10th Cir. 2015) (explaining that in employment discrimination cases, plaintiffs bear the ultimate burden of establishing that their employer discriminated against them). Accordingly, Dr. Burton's proposed testimony is precluded under Rule 403.

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant the Board of Trustees for Colorado Mesa University's Motion to Strike Report of and Exclude Testimony of Plaintiff's Expert Laura Burton (Doc. # 57) is GRANTED.

DATED: May 1, 2023

BY THE COURT:

*Christine M. Arguello*
CHRISTINE M. ARGUELLO
Senior United States District Judge